UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAZZY INVESTMENTS,

    Plaintiff,

v.

CITY OF DEARBORN, ET AL.,

    Defendants.
_____/

Case No. 16-10879

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Bazzy Enterprises, LLC, ("Plaintiff") filed this civil rights case on March 10, 2016, against the City of Dearborn ("City"), the City of Dearborn's Zoning Board of Appeals ("Zoning Board"), and five of the City of Dearborn Zoning Board of Appeals commissioners, individually and in their official capacity (collectively "Defendants"). (Dkt. 1.) Plaintiff's Complaint asserts the Defendants deprived Plaintiff of the reasonable use of its land, its due process rights, and its equal protection rights in violation of 42 U.S.C. § 1983, when the Zoning Board denied Plaintiff's application for a zoning variance to increase the permitted occupant load of its banquet hall despite limited available parking.

Defendant brings this Motion for Preliminary Injunction seeking injunctive relief during the pendency of this action. Defendant is asking the Court (1) to compel Plaintiff not to exceed its occupancy load, something that is already required under the current certificate of occupancy; (2) to compel Plaintiff to refrain from blocking any fire exits or fire hydrants, something that is a matter of local law; (3) to prevent Plaintiff from using indoor fireworks

displays, again something that would be subject to the local fire code; and (4) to prevent Plaintiff from allowing parking in a way that would obstruct fire lanes, exits, means of egress to and from the property, and otherwise cause a public nuisance or hazard which is also a matter of local law.  Defendants' requested injunction therefore seeks to preserve the status quo ante and to prevent Plaintiff from violating existing laws.  At its core, Defendants' motion is an "obey-the-law" injunction.

Plaintiff's complaint acknowledges the occupancy code, local ordinances, and basic parking restrictions but takes issue with the Zoning Board denying their requested variance regarding occupancy and parking.   The Court held a hearing on the preliminary injunction motion on July 25, 2018.  Following the hearing, Plaintiff improperly filed a supplemental response in opposition to Defendants' motion for preliminary injunction.  (Dkt. 69.)  Although this response was improperly filed, the Court nevertheless considers the substance of that filing in this opinion and order.  For the reasons stated below the Court GRANTS Defendants' preliminary injunction.

I. Facts

Plaintiff currently owns and operates a banquet facility, Greenfield Manor, principally used for weddings and other social gatherings, in the City of Dearborn.  (Pl. Resp. Preliminary Inj., Dkt. 57, at 5; PgID 372.)  The building's previous owner converted the structure from a grocery store into the Greenfield Manor banquet hall in 2001.  As part of the conversion the Zoning Board granted a number of variances for the non-conforming structure.  At the time, the Zoning Board noted that the site was parking deficient.  The zoning variances for the facility were set at 384 persons, including 40 employees.

Plaintiff purchased the property in 2006. Between 2006 and 2008 there is a discrepancy between Plaintiff and Defendants about what the proper certificate of occupancy was for the building. (Dkt. 57-3, at3; PgID 449.) Defendants asserted at the hearing that the occupancy was always 384, although they admit issuing a mistaken placard (although not a proper certificate of occupancy) for a higher amount[1]. Plaintiff's assert in their supplemental filing that the legitimate occupancy during this period was 644. (Dkt. 69, at 1; PgID 717.) Plaintiff provides an undated and unsigned form titled "City of Dearborn Department of Building & Safety" which lists "the maximum occupant count for [Greenfield Manor] is 644 persons total." (Pl. Compl. Ex. A; Dkt. 1, at 11.) Defendant avers it is not a certificate of occupancy, and that this placard was issue in error. (D. Answer; Dkt. 16 at 3; PgID 77.) Defendant provides a 2009 dated and signed official certificate of occupancy for Greenfield Manor which supports the building's present actual occupancy is 384 persons. (Def. Mot. for P. Injunction; Dkt. 49-3, at 2; PgID 220.) It is therefore undisputed that as of 2009 Plaintiff was adequately informed that the legal certificate of occupancy for the building, issued by the City of Dearborn was 384 persons[2].

---

[1] There is some indication that the structure itself, after Plaintiff completed renovations related to fire doors, may appropriately be capable of accommodating the higher 644 occupancy. Plaintiff claims the building is capable of an even higher occupancy load. However the City's ordinances require appropriate parking as part of its occupancy determination, and have prevented the Plaintiff from securing the higher certificate of occupancy. Although Plaintiff has made arrangements to lease local parking space, or use valet parking to increase its available parking, these are terminable rights. In contrast the occupancy variance would run with the land. The Zoning Board has expressed a need for more permanent parking accommodations such as an easement in order to approve the needed variance for an increased occupancy load.

[2] Plaintiff states in the supplemental briefing that the banquet facility is enormous and is capable of an occupancy load of 812+ individuals and provides an architect letter and related architectural documents in support. (Dkt. 69, at 2; PgID 718.)

3

Over the next several years, beginning in 2010 a series of occupancy issues arose between Plaintiff and the City of Dearborn, in no small part based on this 260 occupancy discrepancy.

In May 2010, the Dearborn Fire Department responded to Greenfield Manor after a patron complained of overcrowding. Battalion Chief T. Prokop, from Unit #2 stated he entered the hall and "stopped counting at seven hundred [guests]. (Ten guests at a table times seventy tables)." (Dkt. 49-4, PgID 222.) In October 2011, the City of Dearborn sent a letter reminding Plaintiff of the maximum 384 person occupancy and citing a Fire Marshal's report that he had "counted seventy tables, each with ten chairs, thus indicating a maximum seating capacity of 700 people. Moreover, the advertisement for the event indicated seating for 850 people." (Dkt. 49-5; PgID 224.)

In January 2013, the City became aware Plaintiff's rental agreement listed the occupancy at 644. (Dkt. 49-6; PgID 227.) This resulted in the City issuing two letters of warning, followed by citations. Defendants state "[t]o date, Plaintiff has not properly amended its rental contract or changed its posting." (D.'s Preliminary Inj., Dkt. 49, at 12; PgID 204.) In March 2014, Dearborn Fire Inspector Laura Ridenour cited Plaintiff for overcrowding beyond approved capacity, and improper occupant load posting. (Dkt. 49-8; PgID 233-39.) Plaintiff pled no contest to the violations on January 15, 2015, and paid $700 in fines. (*Id.*)

On January 1, 2015, Plaintiff hosted a New Year's Eve party, where police responded to an incident and issued an alcohol citation. (Dkt. 49-9, at 2; PgID 242.) After the fact, the City sent a notice of violation for "illegal use as a nightclub" and "exceeding the maximum mandated occupant load." (Dkt. 49-10; PgID 249.) In June 2015, the City sent a warning

4

letter to Plaintiff stating the Zoning Board had granted a use variance to Greenfield Manor back in 2001, but that Plaintiff's non-compliance with City ordinances put the variance at risk. The letter stated, "the [Zoning Board] is permitted to revoke or modify the conditions of a previously granted variance." (Dkt. 49-11; PgID 251.) The letter listed the following most critical examples of non-compliance with the City ordinances: (1) lack of appropriate fire exits, (2) violation of occupancy load restrictions, (3) use of the premises as a nightclub, (4) illegal presence of alcohol, (5) continued exceeding of occupancy limits resulting in parking issues negatively impacting the surrounding neighborhood, and (6) general blight violations. (Dkt. 49-11; PgID 251-52.) The letter closes stating "[u]nless these violations are immediately and fully addressed, the Greenfield Manor will be referred back to the Zoning Board of Appeals for a review and possible revocation of the use variance granted in 2001." (*Id.*)

In January 2016, Plaintiff appeared before the Zoning Board seeking a parking variance in order to increase its occupancy load to 644 people. The Zoning Board denied the request. Plaintiff filed their March 2016 complaint in response.

On March 24, 2018, the City of Dearborn police and fire personnel conducted an occupancy compliance check of Greenfield Manor, where they observed and documented the banquet room set up for a wedding with 78 tables with 10 chairs per table, totaling seats for 780 people. The space presented other fire hazards, including non-fire treated drapery, blocked exit signs, and tables placed in a way that would prevent exit during an emergency. (Dkt. 49-12, 49-13, and 49-14.) The officers returned during the wedding reception and observed and documented unsafe and violative parking. Inside the officers observed a pyrotechnics display in the ballroom. (Dkt. 49-19.) Corporal Golden observed

5

that, during the pyrotechnics display, "[f]our devices set up on the main dance floor triggered columns of sparks that rose nearly to the ceiling." (Dearborn Police Case Report 3/24/18, Dkt. 49-12, at 5; PgID 257.) Plaintiff provides an affidavit from Haidar Bazzi, who supplied the pyrotechnics display that evening and explains the spark effect[3] is electronic, does not require a fire permit because there is no flame, heat, or fire hazard. Defendants disputed this assertion at the hearing.

Defendant City of Dearborn ("Dearborn") filed this motion for preliminary injunction, pursuant to Federal Rules of Civil Procedure 65, and Local Rules 65.1 on April 20, 2018. Defendants seek the preliminary injunction restraining Plaintiff from (1) exceeding its occupancy load of 344 persons plus 40 staff, (2) blocking any fire exits or fire hydrants; (3) employing any indoor fireworks displays; and (4) parking any vehicles in a manner which would obstruct fire lanes, exits, means of egress to and from the property, or otherwise cause a public nuisance or hazard during the pendency of this cause of action. (Dkt. 49, at 17; PgID 209.)

In response Plaintiff asserts much of the evidence Defendants rely on in their motion is inadmissible and that the claims of a fire hazard are fabricated. (Pl. Resp. Pre. Injunction; Dkt. 57, at 5; PgID 372.)

II. Standard of Review

Injunctive relief is an extraordinary remedy that should be granted only if the movant carries the burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Country Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The proof

---

[3]Sparkular machine NAMM 2017 Sparkler indoors

required to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

The district court must balance the following four factors when considering a motion for preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Assoc. v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014)(enbanc)(internal quotation marks and citations omitted). "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). Nonetheless "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

Generally, the purpose of a preliminary injunction is to preserve the status quo. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco*, 477 F.3d 854 873 n. 13 (6th Cir. 2007) (quoting *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)).

III. Analysis

A. Available Evidence for Consideration

As an initial matter, Plaintiff avers much of Defendant's preliminary injunction argument is based on inadmissible hearsay and an inadmissible *nolo contendere* plea, such that the Court may not consider them.

7

The Court recognizes that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Generally "the Court may properly consider documentary support for a motion for preliminary injunction regardless of whether the materials satisfy the rules of evidence." *Telma Retarder, Inc. v. Balish*, 2017 WL 3276468, at *3 (E.D. Mich. Aug. 2, 2017) (J. Murphy); *see Fidelity Brokerage Servs. LLC v. Clemens*, 2013 WL 5936671, at *5 (E.D. Tenn. Nov. 4, 2013) ("Generally speaking, district courts within [the Sixth Circuit] have not required stringent adherence to rules of evidence when reviewing petitions for injunction relief." (citations omitted)); *Damon's Rests., Inc. v. Eileen K Inc.*, 461 F. Supp. 2d 607, 620 (S.D. Ohio 2006) (recognizing that "district Courts within [the Sixth Circuit] have considered such [hearsay] evidence, as have numerous other circuit courts," in addressing motions for a preliminary injunction (citations omitted)).

Even if the Court were to assume the Federal Rules of Evidence can and do apply here, Plaintiff's request is not properly founded. Plaintiff asks the Court to exclude as inadmissible two Dearborn Police Department case reports[4]. Plaintiff claims these reports are hearsay pursuant to Fed. R. Evid. 803(8)(A)(ii), MRE 803(8)(B), and MCL 257.624. The public records exception, Federal Rule of Evidence 803 (8), allows admission of a record or statement of a public office such as an investigative report if:

> (A) it sets out (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement

---

[4] Plaintiff seeks to exclude Defendants' Exhibits 8, a 01/01/2015 case report, and Defendants' Exhibit 11, a 03/24/2018 case report as inadmissible hearsay.

> personnel; or (iii) in a civil case or against the governement in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Federal Rules of Evidence 803 (8).

Relying on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), Plaintiff argues police reports are inadmissible hearsay as a matter of law. (Pl. Resp., Dkt. 57, at 2; PgID 369.) Plaintiff misunderstands *Melendez-Diaz* which supports the proposition that in criminal cases, police records do not qualify for the public records exception and that documents prepared in anticipation of litigation lack trustworthiness. 557 U.S. at 322. Despite Plaintiff's arguments, *Melendez-Diaz* does not suggest all police reports are inadmissible. In civil matters, police reports may qualify for the public records hearsay exception unless the source of information or other circumstances indicate a lack of trustworthiness. *Santander Consumer USA, inc. v. Superior Pontiac Buick GMC, Inc.*, 2013 WL 27921 at *3 n. 4 (E.D. Mich. Jan. 2, 2013 (Edmunds, J.) (citing *Moore v. Bannon*, 2012 WL 2154274, at *8 (E.D. Mich. June 13, 2012) (Ludington, J.). Plaintiff makes no such lack of trustworthiness argument.

Nonetheless, the Court examines whether the two police reports in question were made in an adversarial setting or in anticipation of litigation. Exhibit 8, a case report from the early morning hours on New Year's Day, January 1, 2015, details officers responding to several callers reporting a fight at Greenfield Manor and reporting what they discovered upon arriving. The officers issued an alcohol citation. The present matter is related to occupancy and unrelated to any alcohol violation. The substance of the case report

includes officers' observation while under the legal duty to report. The public officers can be assumed to have fulfilled their duties faithfully, that they lack motive to falsify, and public inspection will disclose inaccuracies. *Moore*, 2012 WL 2154274, at *8. The Court finds this report admissible under the hearsay exception for public records.

Exhibit 11, a case report from March 24, 2018, is the result of the Fire Inspector conducting a fire code occupancy compliance check and issuing a citation at Greenfield Manor prior to and during an event. The substance of this report and the issued citation are directly related to the present matter. The report details occupancy and fire safety issues in accordance with the Fire Chief's duties. The present preliminary injunction seeks to address these same occupancy and fire safety issues. Although the present matter is not a criminal one, the report may have been prepared in anticipation of litigation regarding occupancy, fire hazards, and parking at Greenfield Manor. If the Federal Rules of Evidence applied to preliminary injunctions, than this Exhibit 11 would not qualify for the hearsay exception.

However this is a preliminary injunction and "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex.*, 451 U.S. at 395. The report contains the officers' first-hand impressions and accounts, no witness statement is included. Given that this is a preliminary injunction motion, the Court will accord some weight to Exhibit 11 at this stage of the proceedings, even assuming that it is properly characterized as hearsay.

Plaintiff, in addition, incorrectly relies on two Michigan laws to support the claim the police records are inadmissible hearsay. Plaintiff cites MCL 257.624 which is part of the Motor Vehicles Code and is not applicable. Plaintiff also cites Michigan Rules of Evidence

803(8)(B)[5]. Michigan rules of evidence however are also not applicable for this preliminary injunction motion pursuant to Fed. R. Civ. P. 65 and LR 65.1.

Finally, Plaintiff lists, although provides no argument, that Exhibit 7 should be inadmissable because of Federal Rule of Evidence 410. Defendants' Exhibit 7 is the register of actions for two state case, *City of Dearborn v. Greenfield Manor*, case no. 14-C-9712 and -9715 OM, out of the State of Michigan 19th judicial district court. The registers of action show Greenfield Manor pled *nolo contendre*, accepting the criminal convictions without admitting guilt, to two March 21, 2014 Dearborn Fire Inspector citations for (1) overcrowding beyond approved capacity and (2) improper occupant load posting. (Dkt. 49, at 12; PgID 204.) Under Federal Rule of Evidence 410, a defendant's no-contest plea in a criminal case cannot be used against him in a subsequent civil suit. Fed. R. Evid. 410.

The Sixth Circuit, however, clarifies that when a party pleads no-contest they cannot then use that legal compromise with the judicial system to their advantage in a subsequent offensive claim. *Shelton v. City of Taylor*, 92 F.App'x 178, 183 (6th Cir. 2004) (Shelton could not make a malicious prosecution claim following a no-contest plea); *See also Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) (where the Sixth Circuit declined to allow Fed. R. Civ. P. 401 to become an offensive weapon and thereby undermine the basic purpose: to promote settlement by ensuring that a defendant need not fear later repercussions from cooperating with the judicial system)).

---

[5]MRE 803(8) is the Michigan exception to hearsay evidence rule and it mirrors the federal hearsay exception, allowing public records "while under a legal duty to report" unless used in a criminal matter. "MRE 803(8) allows admission of routine police reports, even though they are hearsay, if those reports are made in a setting that is not adversarial to the defendant." *People v. McDaniel*, 469 Mich. 409, 413 (2003).

Here Plaintiff has brought a two-count civil claim against Defendants and as pertains to those offensive claims, Plaintiff may not rely on the no-contest pleading. Furthermore, Defendants' mention of Exhibit 7 and the no-contest pleas, here, amounts to stating their factual existence. It is a fact Plaintiff was issued two citations and Defendants explain how those were resolved. Plaintiff is not being subjected to additional liability as a repercussion of having cooperated with those criminal citations. At this stage of the litigation, recognizing that procedures are less formal and evidence is less complete than in a trial, the Court finds Plaintiff's objection unfounded. *Univ. of Tex.*, 451 U.S. at 395. The Court will consider the factual existence of the citations issued on March 21, 2004 and accord some weight to their resolution. The Court does not consider Plaintiff's two no-contest pleas in a manner to apply civil liability to Plaintiff.

B.    Likelihood of Success on the Merits

"To obtain a preliminary injunction, a [movant] must demonstrate, among other things, a strong or substantial likelihood of probability of success on the merits." *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 35 (6th Cir. 1992). This factor is usually satisfied if the moving party has "raised questions going to the merits [which are] so serious, substantial, difficult, and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

Here, Plaintiff brings two counts against Defendants. The first is that Defendants' parking ordinances, which impact the building's legal occupancy, deprives Plaintiff of its reasonable use of it land and prevents Plaintiff from operating its lawful business. Plaintiff's second count is an appeal of the Zoning Board's denial of Plaintiff's requested variance.

Without stating the Court's ultimate opinion on the merits of the case, Defendants successfully demonstrates a likelihood or probability of success on the merits. The evidence suggests, that Plaintiff has consistently violated an existing occupancy ordinance since 2009 if not sooner. All indications suggest, Plaintiff failed to do proper due diligence at the time of their purchase of the banquet hall and misunderstood the City's existing ordinances and parking variances. Further, Defendants present evidence that the Zoning Board continues to follow established procedures when denying Plaintiff's petition for an additional parking variance and that the Zoning Board made their previous decisions on objectively reasonable basis.

Based on the evidence presently before the Court, Defendants' eventual success in overcoming Plaintiff's claims is highly probable. Accordingly Defendants' have demonstrated a strong likelihood of success on the merits in its defense, that the Zoning Board is acting within its authority and in a lawful manner. Defendants also demonstrate that Plaintiff likely has operated the banquet hall over the spaces legal occupancy and has failed to comply with local fire codes. This factor weighs in favor of Defendants.

C. Irreparable Harm

Defendants argue it will suffer irreparable and noncompensable injury for which damages cannot be determine with a sufficient degree of certainty. "The inability to properly estimate damages weighs in favor of a preliminary injunction." *AmeriGas Propane, Inc. v. Crook*, 844 F.Supp. 379, 390 (M.D. Tenn. 1993). Defendants assert the conditions in the banquet hall pose an immediate and significant threat to the safety of Plaintiff's patrons. Defendants argue a fire within the non-compliant facility would be devastating to those inside and the parking problems would create additional problems for

patrons to evacuate and for fire personnel to help.  Plaintiff responds that it has not demonstrated any disregard for the safety of its patrons and surrounding neighbors. Plaintiff additionally asserts "no fire hazard exists at the Plaintiff's banquet center." 69, at 3; PgID 719.)  This assertion is not supported by proof Plaintiff is complying with the requirements of the fire inspectors or the public safety laws.  Rather Plaintiff states the "patrons whom rent the hall are responsible for drapes and chair coverings for their respective events. Thus, those vendors are required to use only flame-retardant materials." (*Id.*)  In effect, Plaintiff passes over the authority of the Dearborn Fire Inspectors and Fire Chief, in favor of placing the responsibility on patrons and vendors.  This is insufficient.

A potentially deadly fire is a nightmarish outcome with irreparable consequences, including serious injury or death to the guests at Greenfield Manor.  Plaintiff's unwillingness to follow the existing fire safety laws in favor of trusting vendors or possibly placing responsibility on the patrons themselves is irresponsible.  Defendants have regulations and laws that ensure that people will remain safe and Plaintiff cannot unilaterally ignore them. The Court agrees with Defendants that the likelihood of irreparable harm is sufficiently high and severe to weigh this factor in favor of the preliminay injunction

D. Substantial Harm Caused by the Injunction

Defendants rightly argues that the potential harm to Plaintiff, if the Court issues the preliminary injunction would be little more than requiring Plaintiff to comply with existing regulations.  Plaintiff recognizes "the City already has in place those types of ordinances which can adequately protect it without the need for this federal court intervention." (Dkt. 57, at 7; PgID 374.)  It is antithetical then for Plaintiff to claim the injunction itself requires something from Plaintiff more than what is already required of it.  Defendants' injunction

would only serve to increase the penalty for a violation of known regulations. Consequently, there is no substantial harm to Plaintiff as a result of the preliminary injunction and this factor weighs in favor of Defendants.

E. Public Interest

Defendants argue the requested injunctive relief will serve the public interest because Greenfield Manor is operating without regard for potential fire hazards. Plaintiff rejects this description. Nonetheless, the public has a strong interest in trusting that the buildings they enter are within the fire and occupancy code. The general public is not equipped to understand the fire safety and occupancy concerns in large gathering places and it is left to government through fire safety and occupancy codes to protect them.

The public also has a strong interest in local governments enforcing their own laws. To the degree Plaintiff blatantly violates any occupancy or fire codes, it is in the public's interest that the City respond to such contempt. The public's confidence in the state's ability to enforce laws, particularly those associated with public safety, also serves the public interest. It is therefore in the public interest to support Defendants in their attempt to ensure the patrons of Greenfield Manor are safe. This factors also weighs in favor of Defendants.

F. Obey-the-Law Injunction

Each of the four factors weigh in favor of Defendants preliminary injunction. The Court notes however the rarity of this type of injunction. Defendants are requesting an obey-the-law injunction which is worthy of its own consideration beyond the four preliminary injunction factors.

Courts have consistently held that an injunction that merely instructs a party to "obey the law" is disfavored. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding that an injunction which prohibited municipality from discriminating on the basis of race would do "no more than instruct the defendant to 'obey the law' " and therefore was invalid); *Equal Emp't Oppor. Comm'n v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) (" '[s]uch "obey the law" injunctions cannot be sustained' ") (quoting *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 897-98 (5th Cir. 1978)).

As summarized in the Sixth Circuit's recent case *Perez v. Ohio Bell Tel. Co.*, 655 Fed.Appx. 404 (6th Cir. 2016), a number of circuits have addressed requests for injunctions that compel nothing more than obedience to existing law and most have adopted a rule against them. *Id.* at 411. *See, e.g.*, *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) ("[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law."); *McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1182 (3d Cir. 1990) ("A broad 'obey the law' injunction will be vacated."); *Davis v. Richmond, Fredericksburg & Potomac R. Co.*, 803 F.2d 1322, 1328 (4th Cir. 1986) (vacating a paragraph on an injunction that directs the enjoining party to "obey the statute"); *Jake's Ltd., Inc. v. City of Coates*, 356 F.3d 896, 904 (8th Cir. 2004) (holding that a "command to obey the law was overbroad under general equitable principles"); *Glover Const. Co. v. Babbitt*, 172 F.3d 878 (10th Cir. 1999) (addressing a request for an injunction requiring a Native American tribe to obey the law and nothing that "[s]uch injunctions are not appropriately issued"); *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996)

("Consistent with the two foregoing purposes, appellate courts will not countenance injunctions that merely require someone to 'obey the law' ").

However the Sixth Circuit has adopted only part of this rule. Where a court's injunction is a generalized order to abide by a broad legal command the obey-the-law injunction fails. However, where a court orders compliance with specific provisions of a code for a defined period of time, and where there is a legitimate possibility that a particular set of laws may be imminently violated, ordering compliance of those laws remains possible, even if still disfavored, in the Sixth Circuit. *Perez*, 655 Fed.Appx. 404.

In *Perez*, the court analyzed a district court's rejection of a permanent injunction the Secretary of the United States Department of Labor ("Secretary") had sought. The Secretary, acting through the Occupational Safety and Health Administration ("OSHA") filed suit against a company on behalf of thirteen employee complainants alleging the company had violated the OSHA statute ("OSH Act"). Specifically the employees alleged the company had punished them for reporting workplace accidents. In addition to the complaint, the Secretary requested permanent injunctive relief, restraining the company from prospectively violating "Section 11(c)(1) of the Act" which prevents discharge or discrimination of a reporting employee.

The Sixth Circuit upheld the district court's determination that the permanent injunction requested by the Secretary was impermissibly broad under Fed.R.Civ.P. 65(d). Federal Rules of Civil Procedure 65(d) "provides that 'every order granting an injunction. . . .shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail. . . .the act or acts sought to be restrained.' " *E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984). The Sixth Circuit stated

17

"[i]njunctions that seek no more than obedience to the law as written are deserving of scrutiny under Rule 65(d)." *Perez*, 655 Fed.Appx. at 411. *See Express Pub. Co.*, 312 U.S. at 433.

The court then clarified there may be circumstances when obey-the-law injunctions are justified by the facts of the case in which the injunction is sought. *See E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) (explaining circumstances where obey-the-law injunctions have been upheld). The Sixth Circuit acknowledged a narrowly crafted injunction based on specific facts learned during the investigation or discovery may be permissible. *Perez*, 655 Fed.Appx. at 412. The Sixth Circuit restated that "district courts 'should limit the scope of [an] injunction to the conduct which has been found to have been pursued or is related to the proven unlawful conduct." *Howe v. City of Akron*, 801 F.3d 718, 753 (6th Cir. 2015). *See also CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 595 (6th Cir. 2015) ("Courts must closely tailor injunctions to the harm that they address." (internal quotation marks omitted)).

Here the scope of Defendants' requested preliminary injunction is narrow. Defendant requests enforcement of specific laws, in reasonable detail in accordance with Fed.R.Civ.P. 65(d).[6] These are restrictions Plaintiff has allegedly previously violated. Plaintiff even indicates it may continue to violate them when it states it will "continue[] to do business as

---

[6] (1) exceeding its occupancy load of 344 persons plus 40 staff, (2) blocking any fire exits or fire hydrants; (3) employing any indoor fireworks displays; and (4) parking any vehicles in a manner which would obstruct fire lanes, exits, means of egress to and from the property, or otherwise cause a public nuisance or hazard during the pendency of this cause of action. (Dkt. 49, at 17; PgID 209.)

normal, the way it has been conducting itself for years." (Pl. Resp. Pre. Injunction; Dkt. 57, at 7; PgID 374.) The Court finds in this instance an obey-the-law injunction is appropriate.

IV. Conclusion

After balancing all the factors, and the disfavored nature of the obey-the-law injunctions, the Court concludes, that the preliminary injunction Defendants request prohibiting Plaintiff from exceeding the Certificate of Occupancy at Greenfield Manor, 4770 Greenfield Road, and enforcing the fire and occupancy codes, while extraordinary is necessary.

The motion for preliminary injunction is therefore GRANTED.

**ORDER**

It is hereby ORDERED that Defendants' Motion for Preliminary Injunction is GRANTED.

(1) Plaintiff is restrained and enjoined from exceeding its present Certificate of Occupancy as issued by the City of Dearborn. The current Certificate of Occupancy as issued by the City of Dearborn for Greenfield Manor, 4770 Greenfield Road, Dearborn, MI 48126, provides for an occupant load of 344 patrons plus 40 employees. This is a total of 384 persons.

Should the City of Dearborn issue a new valid Certificate of Occupancy for Greenfield Manor, subsequent to this order and dated after August 1, 2018, the occupant load provided in that new Certificate of Occupancy will become the updated occupancy limit as recognized by this Court.

(2) Plaintiff must use reasonable care to ensure its patrons follow local parking regulations. This includes proactively informing its patrons regarding local on-street parking limitations, and fire lanes.

(3) Plaintiff is restrained and enjoined from using any indoor pyrotechnic displays at Greenfield Manor, including but not limited to the Sparkular machine NAMM 2017 Sparkler, or any other cold/electric spark machine, without prior approval of the Dearborn Fire Department or Fire Marshall, including securing all necessary fire and/or other permits in advance.

(4) Plaintiff is restrained and enjoined from violating any indoor local fire codes at Greenfield Manor pertaining to flame-retardant draperies or textiles, fire exits, and means of egress.

SO ORDERED.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated: August 2, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 2, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett  
Case Manager